UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

INTESA SANPAOLO, S.P.A.,

                    Plaintiff,

                                        12 Civ. 2683 (RWS)

     - against -
                                            OPINION

CREDIT AGRICOLE CORPORATE AND INVESTMENT
BANK, ET AL.,

                    Defendants.

----------------------------------------X



A P P E A R A N C E S:


        Attorneys for Plaintiff Intesa Sanpaolo, S.p.A.

        QUINN EMANUEL URQUHART & SULLIVAN, LLP
        51 Madison Avenue, 22nd Floor
        New York, NY  10010
        By:  Philip Z. Selendy
             Jonathan E. Pickhardt
             Nicholas F. Joseph
             Sarah E. Trombley
             Sean P. Baldwin


        Attorneys for Defendants Credit Agricole Corporate and
        Investment Bank and Credit Agricole Securities
        (U.S.A.) Inc.

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        Four Times Square, 42nd Floor
        New York, NY  10036
        By:  Lea H. Kuck
             Gregory A. Litt

Attorneys for Defendant The Putnam Advisory Co., LLC
MILBANK, TWEED, HADLEY & MCCLOY LLP
One Chase Manhattan Plaza
New York, NY  10005
By:  Sean M. Murphy
     Thomas A. Arena
     Justin A. Alfano
     Robert C. Hora


Attorneys for Defendants Magnetar Capital LLC,
Magnetar Capital Fund, LP and Magnetar Financial LLC

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY
By:  Joseph Serino, Jr.
     John P. Del Monaco
     Nathaniel J. Kritzer

**Sweet, D.J.**

Plaintiff Intesa Sanpaolo, S.p.A., ("Intesa" or "Plaintiff") has filed a second amended complaint (the "SAC") in which Intesa has asserted federal securities fraud claims against Credit Agricole Corporate and Investment Bank and Credit Agricole Securities (U.S.A.) Inc. (collectively, "Calyon")[1] and The Putnam Advisory Company, LLC ("Putnam"), and state law claims against Calyon, Putnam, and Magnetar Capital LLC, Magnetar Financial LLC and Magnetar Capital Fund, LP (collectively, "Magnetar", and along with Calyon and Putnam, the "Defendants").

The Defendants have moved, pursuant to Fed. R. Civ. P. 9(b) ("9(b)") and 12(b)(6) ("12(b)(6)"), to dismiss the SAC. Upon the conclusions set forth below, the Defendants' motions[2] to dismiss are granted with prejudice.

---

[1] On February 6, 2010, Calyon changed its name to Credit Agricole.  See Calyon to Become Credit Agricole Corporate and Investment Bank on February 6, 2010, Jan. 27, 2010, http://www.credit-agricole.com/en/News/Press-releases/Financial-press-releases/Calyon-to-become-Credit-Agricole-Corporate-and-Investment-Bank2.  Since the events at issue in this case occurred prior to the change, Credit Agricole will be referred to by its former name.

[2] Each defendant has submitted a separate motion to dismiss the SAC.  See Dkt. Nos. 18, 21 & 25.

**The Facts**

The facts of this case have been set forth in detail in this Court's opinion dismissing Intesa's first amended complaint.  See Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate and Investment Bank, et al., --- F. Supp. 2d ---, No. 12 Civ. 2683 (RWS), 2013 WL 525000 (S.D.N.Y. Feb. 13, 2013) ("Intesa I").  Familiarity with those facts is assumed.

**Prior Proceedings**

Intesa filed its initial complaint on April 6, 2012, in which it asserted claims for federal securities fraud pursuant to Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5(b) (hereinafter "§10(b)"), as well as several related state law claims.  The Defendants moved to dismiss, after which Intesa voluntarily withdrew its complaint. On June 22, 2012, Intesa filed its first amended complaint, which asserted the same causes of action against virtually the same set of defendants as in the initial complaint, but contained additional allegations and documentary evidence in

4

support of Intesa's claims.

On February 13, 2013, the Court issued an opinion in which it dismissed Intesa's §10(b) claims as time-barred pursuant to 28 U.S.C. § 1658(b) ("§1658(b)"), and declined to exercise supplemental jurisdiction over the remaining state law claims. Intesa I, 2013 WL 525000, at *8.

Intesa subsequently filed a second amended complaint ("SAC") in which it has again asserted §10(b) claims as well as related state law claims for fraud and aiding and abetting fraud. The Defendants have moved to dismiss the SAC, contending, *inter alia*, that despite new allegations in the SAC designed to cure the timeliness issue with respect to Intesa's §10(b) claims, those claims are nonetheless time-barred. The instant motions to dismiss were heard and marked fully submitted on May 22, 2013.

## **Applicable Standards**

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v.

5

Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." County of Suffolk, New York v. First Am. Real Estate Solutions, 261 F.3d 179, 187 (2d Cir. 2001) (quoting Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996)).

To survive a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

In addition, to the extent that the asserted claims sound in fraud, the complaint "must satisfy the heightened pleading requirements set forth in Rule 9(b), as well as the pleading standard mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)." Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108 (2d Cir.

6

2012).  Under Rule 9(b), a plaintiff must "(1) specify the
statements that the plaintiff contends were fraudulent, (2)
identify the speaker, (3) state when and where the statements
were made, and (4) explain why the statements were fraudulent."
Id. (quoting Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004))
(quotation marks omitted).  Under the PSLRA, a plaintiff must
(1) "specify each misleading statement," (2) "set forth facts on
which a belief that a statement is misleading was formed," and
(3) "state with particularity facts giving rise to a strong
inference that the defendant acted with the required state of
mind."  Id. (quoting Dura Pharms., Inc. v. Broudo, 544 U.S. 336,
345 (2005)) (quotation marks and brackets omitted).


**Intesa's §10(b) Claims Are Time-Barred Pursuant To §1658(b)**


        Intesa I's dismissal of Intesa's §10(b) claims was
predicated upon the conclusion that those claims were time-
barred pursuant to §1658(b), which requires that federal
securities claims such as those asserted under §10(b) be filed
no later than the earlier of: "(1) two years after the discovery
of the facts constituting the violation; or (2) five years after
such violation."  28 U.S.C. § 1658(b).  The Court found that
under §1658(b), the time for Intesa to file its §10(b) claims

expired on March 6, 2012, which was five years after the latest
misrepresentation alleged in the first amended complaint.
<u>Intesa I</u>, 2013 WL 525000, at **6-7.  Since Intesa had first
asserted its §10(b) claims in a complaint filed on April 6,
2012, the Court concluded that those claims were time-barred.
<u>Id.</u>

        However, in so holding, the Court stated as follows:


        It bears noting that the contract
        memorializing the Pyxis Swap incorporates by
        reference a set of documents referred to as
        the "Underlying Documents," which are
        defined as "the indenture, trust agreement,
        pooling and servicing agreement or other
        relevant agreement(s) setting forth the
        terms of the Reference Obligation."  <u>See</u>
        Kuck Decl. Ex. C ("Swap Contract") at 1, 27.
        Since Intesa alleges that the Swap Contract
        was executed by Calyon on April 24, 2007,
        <u>see</u> FAC ¶ 67, if any of the documents
        considered to be "Underlying Documents" for
        purposes of the Swap Contract contained
        misrepresentations regarding Putnam's role
        as collateral manager, Intesa's § 10(b)
        claims against Calyon and Putnam may
        possibly be timely with respect to 1658(b)'s
        five-year post-violation deadline.  However,
        Intesa does not make any allegations in the
        FAC regarding misrepresentations or
        omissions in the Swap Contract with respect
        to the timeliness of Intesa's § 10(b)
        claims.

Intesa I, 2013 WL 525000, at *8 n. 9.

        In the SAC, Intesa has made two attempts to cure the
timeliness issue with respect to its §10(b) claims.  First,
Intesa has alleged that among the "Underlying Documents"
incorporated into the Pyxis Swap are (i) the Collateral
Management Agreement ("CMA"), by virtue of the CMA's
incorporation by reference into the Indenture, as well as by
virtue of the CMA being one of the "relevant agreements setting
forth the terms of the Reference Obligation," SAC ¶¶ 87-88; and
(ii) the Offering Memorandum ("OM"), by virtue of its
incorporation by reference into the Indenture, SAC ¶ 89.  Since
Intesa has alleged that the CMA and OM contain
misrepresentations that are sufficient to support Intesa's
§10(b) claims, see SAC ¶ 101, and since the Pyxis Swap was
executed less than five years prior to the filing of the initial
complaint, Intesa has contended that its §10(b) claims are
timely under §1658(b).  See Plaintiff's Memorandum of Law in
Opposition to Calyon's and Putnam's Motions to Dismiss the
Second Amended Complaint ("Pl. Opp.") at 11-15.

        Second, Intesa has alleged that additional
misrepresentations sufficient to support its §10(b) claims were

9

made by both Calyon and Putnam less than five years prior the filing of its initial complaint, see SAC ¶¶ 108-09, which would render its §10(b) claims against both of those defendants timely under §1658a(b).

As set forth below, both of Intesa's attempts to cure the timeliness issue are unavailing.

A.  Neither the CMA Nor the OM Were Incorporated By Reference Into The Pyxis Swap

In support of its contention that the CMA was incorporated by reference into the Pyxis Swap via the CMA's incorporation into the Indenture, Intesa has cited to a provision in Section 15 of the Indenture that states as follows:

> The Issuer . . . hereby assigns, transfers,
> conveys and sets over to the Trustee, for
> the benefit of the Secured Parties, all of
> the Issuer's estate, right, title and
> interest in, to and under the Collateral
> Management Agreement . . . .

Declaration of Robert C. Hora in Support of Defendant Putnam Advisory Company, LLC's Motion to Dismiss the Second Amended Complaint, Ex. 2 ("Indenture") at 265.

10

The Second Circuit has held that "[u]nder New York law, 'a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it.'" PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996) (quoting Jones v. Cunard S.S. Co., 263 N.Y.S. 769, 771 (N.Y. App. Div. 1933)). However, while express identification of a document is a *necessary* condition for incorporation of that document, it is not a *sufficient* one.  In addition to language explicitly identifying the referenced document, there must also be language that "clearly communicate[s] that the purpose of the reference is to incorporate the referenced material into the contract[,] rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law . . . ." Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d 1339, 1345 (Fed. Cir. 2008) (citing in support, *inter alia*, PaineWebber, 81 F.3d at 1201).

While the Indenture language quoted by Intesa does specifically identify the CMA, it does not evince an intent to incorporate the CMA into the Indenture; rather, the reference to the CMA reads as an acknowledgement of that document for the purposes of identifying the relevant rights and interests that

11

were conveyed to the Trustee pursuant to the Indenture.
Accordingly, the quoted language does not have the effect of
incorporating the CMA into the Indenture.

In addition, Intesa has contended that the CMA is
incorporated into the Pyxis Swap by virtue of it being one of
the "other relevant agreement(s) setting forth the terms of the
Reference Obligation." Intesa I, 2013 WL 525000, at *8 n. 9
(quoting the Pyxis Swap). However, as noted above, under New
York law, one of the requisite conditions for incorporation of a
document is that the document "must be so referred to and
described in the instrument that [it] *may be identified beyond
all reasonable doubt*." PaineWebber, 81 F.3d at 1201 (quoting
Chiacchia v. Nat'l Westminster Bank USA, 507 N.Y.S.2d 888, 889-
90 (N.Y. App. Div. 1986)). It is manifest that this condition
is not satisfied with respect to the CMA via the non-specific
phrase "other relevant agreement(s) setting forth the terms of
the Reference Obligation."[3]

Finally, Intesa has contended that the OM was

---

[3] To the extent that Intesa has also contended that the OM was
incorporated into the Pyxis Swap via the "other relevant
agreement(s)" language, such a contention fails for the same
reasons applicable to the CMA, as well as the fact that the OM
is not actually an "agreement," but rather a disclosure.

incorporated into the Indenture (and therefore into the Pyxis Swap) by virtue of references to the OM found in various sections of the Indenture.  See SAC ¶ 89 (citing sections 2.5(j), 7.16 and 14.14 of the Indenture).  However, the referenced sections of the Indenture deal with topics such as transfers of notes to a qualifying investment vehicle, amendments to certain documents relevant to the swap transaction, and the confidential treatment of documents, none of which relate to the representations regarding Pyxis' collateral manager that serve as the basis for Intesa's §10(b) claims.  See Indenture §§ 2.5(j), 7.16 & 14.14.  Thus, even if, *arguendo*, the references to the OM in these sections of the Indenture were sufficient to effect incorporation, the incorporation would be limited to the contents of OM relevant to those sections, because "'a reference by the contracting parties to an extraneous writing for a particular purpose makes it part of their agreement only for the purpose specified.'" Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp., 534 F.2d 422, 441 (2d Cir. 1975) (quoting Guerini Stone Co. v. P. J. Carlin Const. Co., 240 U.S. 264, 277 (1916)).

B.  The April 20, 2007 Phone Conversation Does Not Remedy the

Untimeliness of Intesa's §10(b) Claim Against Putnam

Intesa has contended that its §10(b) claim against
Putnam is not untimely under §1658(b) because it is based upon,
*inter alia*, alleged misrepresentations made during the course of
an April 20, 2007 phone conversation between an Intesa employee,
Angelo Brizi, and a Putnam employee, John Van Tassel (the "April
20, 2007 Phone Conversation"), in which Van Tassel allegedly
told Brizi that "[n]otwithstanding the spike in delinquencies
the total losses [on the Intesa portfolio] should not be high."
SAC ¶ 109.

However, in order "for a general statement of optimism
to be actionable [under §10(b)], Plaintiffs must demonstrate
that the opinion was not honestly held." Robbins v. Moore
Medical Corp., 894 F. Supp. 661, 672 (S.D.N.Y. 1995) (citing In
re Time Warner Inc. Sec. Litig., 9 F.3d 259, 266 (2d Cir.
1993)). Here, Intesa has made no allegations demonstrating that
Van Tassel did not honestly hold the opinion that he was
purported to have communicated to Brizi. Moreover, "[a]
defendant corporation is deemed to have the requisite scienter
for fraud only if the individual corporate officer making the
statement has the requisite level of scienter." Kinsey v.

14

Cendant Corp., No. 04 Civ. 0582 (RWS), 2004 WL 2591946, at *13
(S.D.N.Y. Nov. 16, 2004) (quoting In re Apple Computer, Inc.
Sec. Litig., 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002)).
Here, Intesa has not alleged *any* facts regarding Van Tassel's
scienter, let alone particular facts that would "giv[e] rise to
a strong inference that the defendant acted with the required
state of mind," as is required to state a claim under §10(b).
Anschutz, 690 F.3d at 108.  Accordingly, the April 20, 2007
Phone Conversation cannot serve as a misrepresentation upon
which Intesa's §10(b) against Putnam may be founded.


C.  Calyon's March, April and May 2007 Valuations Do Not Remedy
the Untimeliness of Intesa's §10(b) Claims Against Calyon


        Intesa has contended that its §10(b) claim against
Calyon is timely because it is based upon misrepresentations
contained in valuations that Calyon sent to Intesa in March,
April and May 2007.  SAC ¶ 108.  This argument is facially
flawed.  The March and April valuations, which were sent to
Intesa on March 6, 2007 and April 2, 2007, respectively, see
Declaration of Lea Haber Kuck in Support of Motion to Dismiss
the Second Amended Complaint, Ex. J, cannot serve as
misrepresentations upon which Intesa's §10(b) claim can be

15

premised because Intesa first asserted its §10(b) claim on April
6, 2012, which is more than five years after the March and April
2007 valuations were communicated to Intesa.

The May 2007 valuation, which was made on May 2, 2007,
came *after* Intesa had already engaged in the Pyxis Swap
transaction,[4] and therefore could not, as a matter of law, have
been relied upon by Intesa when it decided to engage in the
Pyxis Swap.  See Polar Molecular, 12 F.3d at 1175 (noting that a
statement made after the contract was signed "obviously could
not have induced [plaintiff] to sign the contract").

**Intesa's State Law Claims Are Dismissed**

Because Intesa's federal claims are dismissed as time-
barred pursuant to 28 U.S.C. § 1658(b), supplemental
jurisdiction will not be exercised over the remaining state law
claims.  Although there is an option to exercise supplemental
jurisdiction over these non-federal claims, "in general, where
the federal claims are dismissed before trial, the state claims
should be dismissed as well."  Olle v. Columbia Univ., 332 F.

---

[4] Intesa has alleged that the transaction took place on April 24,
2007.  SAC ¶ 86.

Supp. 2d 599, 620 (S.D.N.Y. 2004) (quoting Marcus v. AT&T Corp.,
138 F.3d 46, 57 (2d Cir. 1998)). "As this case is still at the
pleading stage and no discovery has yet taken place, with due
consideration of concerns of judicial economy, convenience and
fairness, Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d
1182, 1191 (2d Cir.1996), it is appropriate to follow that
practice in this instance." GVA Market Neutral Master Ltd. v.
Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321,
334 (S.D.N.Y. 2008).

**Conclusion**

        Although leave to amend should generally be granted
freely, see Fed. R. Civ. P. 15(a)(2), it is not warranted where
the amendment of a complaint would be futile.  See Acito v.
IMCERA Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995).  Intesa was
permitted to amend its complaint following Intesa I, but has
failed to overcome the timeliness issues that proved fatal for
the §10(b) claims asserted in the first amended complaint.
Dismissal with prejudice is therefore appropriate at this
juncture.  See Urban Group Exercise Consultants, Ltd. v. Dick's
Sporting Goods, Inc., No. 12 Civ. 3599 (RWS), 2013 WL 866867, at
*6 (S.D.N.Y. Mar. 8, 2013).

                              17

Accordingly, and upon the conclusions set forth above, the Defendants' motions to dismiss Intesa's §10(b) claims as time-barred pursuant to 28 U.S.C. § 1658(b) are granted with prejudice, and supplemental jurisdiction over Intesa's state law claims is declined.

It is so ordered.

New York, NY
August 3/, 2013

ROBERT W. SWEET
U.S.D.J.

18